William J. Regan, S.
This is a proceeding brought by the coexecutors of the above deceased seeking a determination under section 12 of the Personal Property Law as to whether a specific bequest contained in paragraph Sixth of the last will and testament of Lucilla H. Dunbar should go to the State University of New York or to the University of Buffalo Foundation, Inc.
The basic underlying facts are undisputed. Paragraph Sixth of the testatrix’ will, dated June 27, 1955, provided: “ I give and bequeath to the University of Buffalo Fifty Thousand Dollars for its Endowment Fund.”
The testatrix died a resident of Erie County on February 14, 1963. The petitioners were appointed coexecutors of her estate by this court on March 21, 1963. At the time of the testatrix’ death no change had been made in the afore-mentioned paragraph Sixth of her last will and testament dated June 27, 1955.
Effective September 1,1962 the University of Buffalo merged with and became part of the State University of New York.
This matter arises because the University of Buffalo, which is the agency mentioned in the afore-mentioned paragraph Sixth of the testatrix’ last Avill and testament, -no longer has any legal existence. Basically, this is a dispute between the State University of New York, who contends:
First, that it is the legal successor to the old University of Buffalo by operation of law and, as such, is entitled to receive the $50,000 bequest.
Secondly, that, despite the question of legal successor,ship, the State University should receive the bequest under the application of the historical doctrine of cy pres.
*1046 In opposition, the University of Buffalo Foundation, Inc., which was organized after the date of the will and shortly before the final merger of the two institutions, argues that the old University of Buffalo no longer exists for any purpose and that, under the doctrine of cy pres, this court should find that the Foundation more closely resembles the implied intent of the testatrix and, as such, is entitled to the gift. The coexecutors wisely sought the guidance of this court prior to making any disbursement of the bequest.
The underlying question this court must resolve is whether a literal compliance with the bequest in question has been rendered impracticable or impossible.
iSection 12 of the Personal Property Law provides, in part: “ The supreme court shall have control over gifts * * * and whenever it .shall appear to the court that circumstances have so changed since the execution of an instrument containing a * * * bequest * * * as to render impracticable or impossible a literal compliance with the terms of such instrument, the court may * # * make an order directing that such * * * bequest shall be * * * expended in such manner as * # * will most effectually accomplish the general purpose of the instrument ”. (The section goes on to give concurrent jurisdiction to the Surrogate’s Court).
We must first carefully examine, in light of all the exhibits and testimony produced at the hearings, the true circumstances surrounding and the legal effect of the merger that occurred between the University of Buffalo and the State University of New York as the parties themselves intended.
The University of Buffalo was an institution of higher education founded and incorporated in 1845 by the Board of Regents of the State of New York. Over the years, as a private institution, it flourished and became a well-recognized center of higher education. Its value and worth to this community have always been considerable, and its administration and staff have achieved world renown and respect. Like many other private educational systems, it found its desired growth and development 'somewhat restricted by its financial resources. It stood on the brink of developing into one of the truly great “ centers of wisdom ” of our universe, but unfortunately it was faced with the burden of privately financing its orderly expansion. This is where the State of New York entered the picture.
The presence of the State of New York, through its State University, has tremendously expanded and broadened its growth and development potential. There is unquestioned value *1047 to the university and to our entire community as a result of the merger. Entire new educational horizons have been opened and made possible.
Under authority of subdivision 2 of section 355 of the Education Law, and after extended negotiations by agreement dated May 31, 1962 and executed June 27, 1962, the University of Buffalo merged with and became part of the University of the State of New York.
Subdivision 2 of section 352 of the Education Law provides: “ Whenever such corporation acquires, absorbs, merges or consolidates with or becomes the successor to any higher educational institution, all the right, title and interest in real property held by such predecessor institution shall vest in and be held and enjoyed by the people of the state of New York and state university of New York shall thereupon be deemed to be vested with and become the successor to all right, title and interest in any personal property, or any beneficial interest therein, or any other rights and powers possessed by such institution, whether derived by gift, grant, devise or bequest, in trust or otherwise.”
In essence, and perhaps in spirit, the old institution continues to exist. The buildings are the same, the staff continues its work, the curriculum, if anything, is expanded, the community it serves is broadened. The only important change in its structure is its name and its method of financing. It is now a State-owned and operated function, instead of being privately financed.
Section 352 clearly anticipates that all property vested in the merged institution at the time of the merger or consolidation shall become the absolute property of the State University. About this there can be no serious question.
On the strength of this section, as part of the merger agreement, the University of Buffalo turned over approximately $30,000,000 of its then-existing endowment funds to the State University. It is interesting to note that if the testatrix had died prior to the merger, her gift to the then-existing University of Buffalo would have passed directly to the State University, together with the other $30,000,000.
At the same time as the merger the University of Buffalo Foundation, Inc., was created. The State permitted the old University of Buffalo, with the consent of certain donors, to transfer approximately $3,000,000 of its endowment funds to the Foundation, prior to its merger with the State University.
But, of course, the gift in question did not vest until after the merger and upon the death of testatrix in February of 1963.
*1048 There can be no question but that the parties to the agreement of merger intended that the old University of Buffalo should merge into and become part of the State University. (¡See Agreement Preliminary to Merger, dated May 31, 1962 and marked as Exhibit “ A ” in Evidence, p. 14 et seq.)
The contractual language contained in paragraph 1 on page 14 of “ corporate identity, existence, power, franchises, rights and immunities of the University of Buffalo shall be merged into the State University ’ ’ can only mean that the parties intended to terminate the old University of Buffalo and make it part of the .State University.
Beading the contractual language, together with subdivision 2 of section 352 of he Education Law leads this court to the conclusion that the University of Buffalo was absorbed and consolidated with the State University and, accordingly, State University is deemed to be vested with and become the successor to all right, title and interest in any personal property, or any beneficial interest therein, whether derived by gift, grant, devise or bequest in trust or otherwise, whether indefeasibly vested or vested in futuro. This can only mean that the parties intended that future gifts, as well as vested gifts, were to become part of the assets transferred to the State University.
This court is not aware of any judicial precedence dealing with this particular point, but feels the reasoning of our Court of Appeals in 1957 in the British Hospital cases is the closest pertinent authority. (Matter of Ablett, 3 N Y 2d 261; Matter of Perkins, 3 N Y 2d 281; Matter of Bishop, 3 N Y 2d. 294.)
In each of these cases bequests were given by New York residents to various British Hospitals which subsequently were nationalized by the British government.
In the Ablett decision, beginning on page 272, the then Chief Judge Con way, speaking for the majority opinion, stated: “ Before a divestiture may properly be declared there must be a showing that the testatrix’ intention, as expressed through her gift * * # cannot be carried out. ’ ’
The court then went on to conclude that because the hospitals continued the identical services, facilities, staff, etc., that literal compliance with the terms of testatrix’ will was practicable. (¡See p. 276.)
This court is particularly moved by the assurances of counsel for the State University that the $26,000,000 previously transferred to it is being and will continue to be held for the use and benefit of the State University of-New York at Buffalo and not become general funds of the over-all State University financial picture and, further, that State University is willing *1049 to agree that Mrs. Dunbar’s bequest of $50,000 be similarly held. (See transcript of hearing dated July 26, 1963 commencing p. 44.) In fact, section 3 of the Agreement Preliminary to Merger provides exactly that.
Hence, under section 12 of the Personal Property Law, because it is neither impractical nor impossible to comply literally with the testatrix’ bequest, the gift passes by subdivision 2 of section 352 of the Education Law directly to the State University upon the condition that the bequest be applied strictly for the use and benefit of the University of the State of New York at Buffalo and no other.
It is the opinion of this court that merely because the name of the university was changed and that it is dependent upon public funds as opposed to private funds, Mrs. Dunbar’s bequest can be administered equally well by the State University as the successor corporation.
It is entirely possible that a gift may be worded in such a fashion or restricted to such a purpose that a literal compliance might be impossible or impracticable. In such a ease a court might be required to apply the doctrine of cy pres and determine which institution, if any, is best equipped to accomplish the intent of the testator.
It would seem that it is incumbent upon all interested parties, including our local bar associations, to impress upon our community the importance of reviewing all wills wherein a gift was given to the old University of Buffalo. Only this will insure that the testator’s actual wishes are observed.
Although this court finds that no proceeding lies under section 12 of the Personal Property Law, it will approve an order directing payment of the bequest under paragraph Sixth, upon the settlement of the accounts of the coexecutors, to the State University, upon the express condition that the University of the State of New York will accept the gift solely for the use and benefit of the University of the State of New York at Buffalo, for its endowment fund.